UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:21-cr-00042-JLT-SKO |
| Plaintiff, | ORDER RE MOTIONS IN LIMINE |
| v. | (Doc. 40) |
| CHARLES PORTER, | |
| Defendants. | |

**INTRODUCTION**

On February 11, 2021, the grand jury returned an indictment in which it charged Defendant Charles Porter with one count of Assault with the Intent to Commit Aggravated Sexual Abuse, in violation of 18 U.S.C. § 113(a)(1); one count of Assault with the Intent to Commit Abusive Sexual Contact, in violation of 18 U.S.C. § 113(a)(2); one count of Attempted Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(a)(1); one count of Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(b); and one count of Assault by Striking or Wounding, in violation of 18 U.S.C. § 113(a)(5). (Doc. 1.) Trial is currently scheduled to commence April 4, 2022.

The allegations all relate to an incident that took place on April 14, 2020 in concession employee housing within Yosemite National Park. According to the Government, Defendant entered victim T.D.'s one-room cabin while T.D. was asleep and attempted to forcibly sexually

assault T.D. Defendant allegedly punched T.D. several times during the course of the attempted assault. During the ensuing struggle, T.D. was able to yell for help and neighbors eventually removed Defendant from T.D.'s cabin.

The Government has submitted nine motions in limine for resolution before trial. (Doc. 40.) In addition, the Government has provided notice of its intent to offer the testimony of witness A.H. under Federal Rule of Evidence 413. (Doc. 41.) Defendant opposes admission of the Rule 413 evidence as well as several of the Government's motions in limine. (Doc. 51.) Oral argument on the motions took place on March 31, 2022. For the reasons discussed on the record and set forth below, the Court rules on the motions as follows.

**A.     Motion to Admit Testimony of A.H. Under Federal Rule of Evidence 413**

The Government moves under Federal Rule of Evidence 413 to offer evidence that Defendant engaged in prior acts of sexual assault. (Doc. 41.) The proposed witness, A.H., was in a relationship with Defendant from approximately the spring of 2014 through February 2016. (*Id.* at 3.) A.H. lived with Defendant in Pomona, California starting in September 2015. (*Id.*) While they were living together, according to the Government's proffer, Defendant physically and sexually assaulted A.H. (*Id.*) The Government explains the proffered evidence and its relationship to the facts of the instant case as follows:

> A.H. describes four specific sexual acts by the defendant that are strikingly similar to what T.D. describes. First, A.H. told investigators that, on more than one occasion, the defendant strangled her during sex to the point where she would lose consciousness. T.D. also described how the defendant strangled him to the point where he would lose consciousness. Second, A.H. told investigators that the defendant bit her forcefully during sex, including on her arms and chest, causing bleeding and bruising. T.D. also told investigators that the defendant bit him on his arms and his lip, and he took pictures several days after the assault that show severe bruising on his arms resulting from the defendant's bites. Third, A.H. told investigators that the defendant penetrated her anus digitally and with other objects against her consent, and in a way designed to cause her pain. T.D. told investigators that the defendant forcibly pulled down his underwear and attempted to penetrate his anus either digitally or with an object. T.D. told investigators that his anus was sore the next day. Fourth, both T.D. and A.H. also describe that the defendant pinned them down while they were lying on their backs, using his legs to prevent them from moving.

(*Id*. at 8.) The Government offers the evidence to corroborate T.D.'s account of the events at issue in the Indictment. (*Id*. at 7.)[1]

Rule 413 provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). The admissibility of such evidence also is subject to the balancing test set forth in Federal Rule of Evidence 403. *Id*. (indicating evidence admissible under Rule 413 "may be considered on any matter to which it is relevant"); *see also United States v. LeMay*, 260 F.3d 1018, 1022 (9th Cir. 2001). "Sexual assault" is defined for purposes of Rule 413 as "a crime under federal law or under state law . . . involving: (1) any conduct prohibited by 18 U.S.C. chapter 109A; (2) contact, without consent, between any part of the defendant's body — or an object — and another person's genitals or anus; (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body; (4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or (5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)–(4)." Fed. R. Evid. 413(d).

As a threshold matter, on its face Rule 413 only applies if (1) the present case involves an accusation of a sexual assault and (2) the offered evidence also involves a sexual assault. Here, Defendant does not dispute that he is accused of at least one form of sexual assault that qualifies under Rule 413. (Doc. 51 at 1.) Defendant does argue that his *relationship* with A.H. was a consensual one, even if A.H. perceived some sex acts undertaken therein to be non-consensual. (*See id*. (arguing "the alleged assaults upon A.H. were during the course of their relationship, to which she, in part, allowed not objecting and continuing in the relationship that she knew would result in such behavior").) This argument at least arguably calls into question whether A.H. consented to Defendant's prior conduct and therefore whether that prior conduct qualifies as a "sexual assault" under Rule 413.

///

---

[1] The Government proposes that, A.H.'s testimony, if admitted, should be paired with the limiting instruction set forth at 9th Circuit Criminal Jury Instruction 2.11 (2002).

3

A prior sexual assault may be proved in many ways, including with a judgment of conviction, testimony of the victim, or the defendant's own admission. *See United States v. Redlightning*, 624 F.3d 1090, 1120 (9th Cir. 2010). Because Defendant's interactions with A.H. involve uncharged and contested conduct, to be admissible under Rule 413, the proffered evidence must also satisfy the rule of conditional relevance set forth in Federal Rule of Evidence Rule 104(b). *See United States v. Norris*, 428 F.3d 907, 913–14 (9th Cir. 2005). "When determining whether there is sufficient evidence to satisfy Rule 104(b), the court is not required to make a preliminary finding that the government has proved the conditional fact." *Id*. (applying standard set forth in *Huddleston v. United States*, 485 U.S. 681, 689 (1988), to admission of evidence under Rules 413-415). Rather, the court must examine all of the evidence and determine "whether the jury could reasonably find the conditional fact by a preponderance of the evidence." *Id*.

The Government indicates that A.H. gave several statements to law enforcement regarding her interactions with Defendant. According to the Government's proffer, A.H. told investigators that Defendant forced her to engage in sex acts against her *expressed* objections. At least one of A.H.'s statements was recorded and transcribed, and it was produced in discovery. Defense counsel conceded at oral argument that A.H. will testify that certain sexual interactions she had with Defendant during the course of their relationship were non-consensual. Based upon the record before the Court, and in the absence of any dispute that A.H. would testify consistently with her prior statements[2], the Court finds a reasonable jury could find by a preponderance of the evidence that Defendant sexually assaulted A.H.

The Court must next evaluate whether the Rule 413 should nonetheless be excluded under Rule 403. Rule 403 provides that relevant evidence may be excluded, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . ." Because Rule 413 is subject to Rule 403 balancing, it is "not a blank check entitling the government to introduce whatever

---

[2] As mentioned, Defendant emphasizes that his relationship with A.H. was a consensual one. At oral argument, defense counsel argued that this undermined the relevance of A.H.'s evidence even if A.H. "in retrospect" perceived some sex acts undertaken therein to be non-consensual Defendant contends, A.H.'s evidence should be excluded because it is too dissimilar from the facts alleged in the Indictment. This dissimilarity argument, which is addressed below, does not call into question A.H.'s assertion that she did not consent to Defendant's conduct.

4

evidence it wishes, no matter how minimally relevant and potentially devastating to the defendant." *LeMay*, 260 F.3d at 1022; *see also id*. at 1027 (urging district courts to "pay 'careful attention to both the significant probative value and the strong prejudicial qualities'" of propensity evidence). To determine whether to exclude under Rule 403 evidence that is admissible under Rule 413, the Ninth Circuit has instructed courts to consider the following non-exhaustive factors: (1) the similarity of the other acts to the acts charged; (2) the closeness in time of the other acts to the acts charged; (3) the frequency of the other acts; (4) the presence or lack of intervening circumstances; and (5) the necessity of the evidence beyond the testimonies already offered at trial. *See LeMay*, 260 F.3d at 1027–28; *Blind–Doan v. Sanders*, 291 F.3d 1079, 1082 (9th Cir. 2002) (applying factors in Rule 403 analysis of admissibility of evidence under Rule 413); *see also Old Chief v. United States*, 519 U.S. 172, 193, (1997) (internal quotations and citations omitted) ("Unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.").

   *1. Similarity*

Defendant argues that his interactions with A.H. are not sufficiently similar to the allegations in this case which involve "a male acquaintance, committed outside of a sexual relationship, and allegedly with force." (Doc. 51 a t 1.) The Government concedes that there are some distinctions, namely A.H. is female and T.D. is male and A.H. and Defendant were in a relationship while T.D. and Defendant were "vague acquaintances." (Doc. 41 at 9.) The Government nonetheless argues that these distinctions do not undermine the similarity of the assaults. (*Id.*) On the present record, the Court agrees that, as proffered, the acts of sexual assault about which A.H. would testify are substantially similar to those alleged by victim T.D. The proffered evidence reveals parallel accusations of strangulation, biting, and anal penetration (or attempted anal penetration) without consent. Also, the alleged methods of immobilization used by the Defendant are similar. All of these similarities overwhelm the distinctions drawn by Defendant and render A.H.'s evidence highly relevant. *See also United States v. Yarlott*, No. CR 20-60-BLG-DLC, 2020 WL 6393894, at *4–5 (D. Mont. Nov. 2, 2020) (admitting 413 evidence

of prior sexual assault even though defendant apparently knew prior victim but was stranger to second victim; similarities of the assaults were more substantial than differences). Moreover, the Government is prepared to offer evidence, as appropriate, of Defendant's own prior statements that he has had sexual encounters with both women and men. (Doc. 41 at 9.)

### 2. *Closeness in Time*

The alleged assaults of A.H. are sufficiently close enough in time to favor admissibility. A.H. and Defendant lived together between September 2015 and February 2016. Assuming for the sake of this analysis that the assaults on A.H. occurred in September 2015, that was fewer than five years prior to the assault alleged in this case, which took place in April 2020. As the cases cited in the Government's brief indicate (*see* Doc. 41 at 9), courts have admitted evidence with far greater time lapses, sometimes more than decades old. *See, e.g.*, LeMay, 260 F.3d at 1023 (11-year lapse in time); *United States v. Medicine Horse*, 544 F. App'x 678, 679 (9th Cir. 2013) (allowing admission of evidence more than 40 years old, indicating there is no "bright line rule" precluding evidence that is remote in time (citing *United States v. Rude*, 88 F.3d 1538, 1550 (9th Cir.1996)). Defendant does not suggest in his opposition brief that the lapse in time here is significant enough to weigh against admissibility.

### 3. *Frequency of Prior Conduct*

According to the Government's proffer, A.H. will testify to having been assaulted on numerous occasions by Defendant. This, the Government argues, demonstrates that the charged sexual assault was not an isolated incident. (Doc. 41 at 10 (arguing that "defendant's commission of multiple sexual assaults and A.H.'s description of multiple instances where the defendant derived sexual gratification from inflicting bodily injury or physical pain on her favor admissibility because it tends to show that the defendant's actions with T.D. neither a mistake, nor a consensual act").)

### 4. *Intervening Circumstances*

It does not appear there are any intervening circumstances that would bear on the reliability or admissibility of A.H.'s account. Defendant does not mention this factor in his opposition.

### 5. *Necessity of Testimony*

The Government contends that A.H.'s testimony is necessary because it corroborates T.D.'s testimony about the events that only T.D. and Defendant witnessed. (Doc. 41 at 10 (citing *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998) ("propensity evidence has a unique probative value in sexual assault trials and that such trials often suffer from a lack of any relevant evidence beyond the testimony of the alleged victim and the defendant"). In addition, to the extent Defendant may offer a defense based on consent or self-defense, the Government contends that A.H.'s testimony will help counter those assertions. In *United States v. Door*, 663 F. App'x 570, 572–73 (9th Cir. 2016), cited by the government, propensity evidence was permitted, in part, because the defendant attacked the victim's credibility by suggesting the victim was intoxicated, engaged in consensual sex acts, and was punched fewer times than she claimed. Because there were no other witnesses who could corroborate the victim's testimony, the propensity evidence was necessary. *Id*. at 573. Defendant does not challenge these arguments directly, but instead suggests that it would be appropriate for the Court to wait until the Government presents its case in chief before definitively determining the necessity of A.H.'s evidence.

The Court finds that the evidence presented through A.H.'s testimony will serve to corroborate T.D.'s version of the events, to which there are no direct witnesses other than T.D. and Defendant. *See LeMay*, 260 F.3d at 1028 (prior incidents of molestation relevant to corroborate victim testimony); *United States v. Door*, 663 F. App'x 570, 572–73 (9th Cir. 2016) (allowing Rule 413 evidence as corroboration of victim's version of events where Defendant attacked victim's credibility "both by presenting a theory of the case that contradicted her testimony and by suggesting she was impaired by marijuana"). Evidence of other acts "need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." *LeMay*, 260 F.3d at 1029 (emphasis in original). The Court declines to delay its ruling but will entertain argument prior to A.H.'s testimony as to whether a more developed record warrants reconsideration.

///

### 6. Other Factors

Defendant suggests A.H.'s testimony should be excluded because the acts of assault she will testify to have never been charged. *LeMay* indicates that this is not dispositive but is rather a factor that may be considered in conducting the Rule 403 inquiry. *LeMay*, 260 F.3d at 1029 ("[A]lthough we do not suggest that district courts may only introduce prior acts of molestation for which a defendant has been tried and found guilty, we hold that the extent to which an act has been proved is a factor that district courts may consider in conducting the Rule 403 inquiry."). In *LeMay*, for example, the Ninth Circuit noted that the proffered evidence was "highly reliable" in part because the defendant had been convicted of at least one of the other rape charges offered as propensity evidence. *Id*. As Defendant suggests, this factor weighs against admission here.

### 7. Conclusion

Overall, the Court finds that the probative value of A.H.'s testimony is significant. Although there are some questions raised about consent, the record indicates that a reasonable jury could conclude, by a preponderance of the evidence, Defendant sexually assaulted A.H. Those acts are substantially similar to the acts described by T.D. These similarities render A.H.'s evidence highly relevant as corroboration of T.D.'s anticipated testimony. Likewise, the acts to which A.H. will testify occurred relatively close in time to the charged conduct. Though A.H. did not report the conduct to authorities at or near the time it occurred and the conduct was never charged, those facts—which can be argued to the jury—do not overwhelm the probative value of the evidence, which is not substantially outweighed by the prejudicial effect of the evidence. As the Government points out, "the inflammatory potential inherent in the sexual nature of prior sexual offenses cannot be considered in evaluating the admissibility of evidence under Rule 413." *United States v. Medicine Horn*, 447 F.3d 620, 623 (8th Cir. 2006). Moreover, it is not inherently "unfair" to present propensity evidence where that evidence does not "involve conduct any more sensational or disturbing than the crimes with which" the defendant is charged. *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) ("[b]ecause the evidence [of prior abuse] was so similar to [one of] the acts charged, it would not be so facially inflammatory as to unduly divert attention from the issues of the case"). Such is the case here, as A.H.'s anticipated testimony is not any

more sensational than the charged conduct.

The Court further finds that A.H.'s testimony is unlikely to devolve into a mini-trial, nor will it be unduly distracting and time consuming. The Government indicates that its direct examination will be limited and will take no more than 30 minutes. Defendant concedes that his cross of A.H. would also be limited in scope and should not exceed 30 minutes. Consequently, the Court concludes that A.H.'s evidence is admissible under Rule 413. The Government's motion to admit that testimony is GRANTED without prejudice to Defendant renewing his objection prior to A.H.'s direct testimony based upon a more fulsome record.

**B.     Motions in Limine**

   *1. Motion to Exclude Prior Protective Order Denial as to Victim T.D.*

According to the Government's submission, after the April 14, 2020 incident that is the subject of the Indictment, T.D. applied for and was granted an Emergency Protective Order (EPO) from the Mariposa County Superior Court, listing T.D. and four eyewitnesses as protected persons. (*See* Doc. 41 at 12.) On July 14, 2020, that court declined to issue a Temporary Protective Order (TPO) without holding a hearing. (*Id*.)

The Government seeks to exclude on Rule 403 relevance grounds any mention of the TPO denial, arguing that the TPO ruling was subject to a very different legal standard than that which will apply to Defendant's conduct in this case. (*Id*.) Defendant does not oppose the motion. (*See* Doc. 51). The motion is GRANTED.

   *2. Motion to Exclude T.D.'s Statements on Facebook Regarding the Assault and TPO
        Denial*

On the day the Mariposa County Superior Court declined to grant the TPO after the issuance of the EPO, T.D. wrote a post on Facebook that, among other things, arguably expressed his frustration about how his accusations were being handled by investigators. (Doc. 40 at 12.) T.D. also described the assault, posted pictures of his injuries, and named Defendant as the perpetrator of the assault on Facebook. The Government seeks to preclude admission of these Facebook posts. (*Id*.) Because Defendant has not opposed this request, the motion is GRANTED.

*3.   Motion to Exclude Richard Guzman's Prior Misdemeanor Conviction*

The Government anticipates calling Richard Guzman, one of the neighbors who intervened when T.D. called for help from his cabin, as a witness. (Doc. 40 at 13.) Richard Guzman sustained a state law misdemeanor conviction in 2012 that was eventually set aside and dismissed in 2017. The Government seeks to preclude impeachment of Mr. Guzman using this conviction. (*Id.*) Defendant does not oppose this motion. (*See* Doc. 51.) The motion is GRANTED.

*4.   Motion to Exclude Evidence Regarding Anonymous Threats Received by Defendant on Instagram*

The Government indicates that in July 2020, Defendant reported to law enforcement that he had received threats online related to the subject of rape. (Doc. 40 at 14.) The Government moves to preclude admission of this evidence on hearsay and relevance grounds. (*Id.*) Defendant does not oppose the motion. (*See* Doc. 51.) The motion is GRANTED.

*5.   Motion to Exclude Certain Medical Information About Witness.*

The Government indicates that one proposed witness has a sensitive matter in their medical history. The Government moves to preclude mention of that matter at trial on relevance and Rule 403 balancing grounds. (Doc. 40 at 15.) Defendant does not oppose the motion. (*See* Doc. 51.) For the reasons set forth in the Government's motion, the motion is GRANTED.

*6.   Motion to Exclude T.D.'s Prior Misdemeanor Conviction and Evidence of the Incident Underlying that Conviction.*

The Government moves to exclude evidence of T.D.'s 2004 misdemeanor conviction and any evidence related to the incident underlying that conviction. (Doc. 40 at 16.) The conviction in question involved T.D. making unwanted sexual advances toward a complainant. According to the Government's proffer, the complainant alleged that T.D. kissed the complainant on the forehead and then "French" kissed the complainant. (*Id.*) When the complainant pushed T.D. off, T.D. then followed the complainant to the complainant's cabin to ask why the advances were unwanted. (*Id.*) T.D. admitted to kissing the complainant on the forehead, which was witnessed, and to following the complainant to his cabin. (*Id.*) T.D. was charged with two counts of simple

assault in violation of 18 U.S.C. § 113(a)(5), and pleaded guilty to one count in 2004. (*Id*.) The violation carried a maximum penalty of six months imprisonment. (*Id*. at 16-17.) Two months after the incident, the complainant signed a "Declination of prosecution," stating that he and T.D. "resolved our differences" and therefore did not "want to see him prosecuted for this offense." (*Id*. at 17.) The Government seeks to preclude any evidentiary use of T.D.'s misdemeanor under Rule 412(a).

Federal Rule of Evidence 412 generally prohibits the admission of evidence regarding a victim's sexual behavior and propensity in sexual misconduct cases. In pertinent part, the Rule provides as follows:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> (1) evidence offered to prove that a victim engaged in other sexual behavior; or
>
> (2) evidence offered to prove a victim's sexual predisposition.

The Rule "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." Advisory Comm. Note, Fed. R. Evid. 412. Rule 412 applies "in a case involving allegations of sexual misconduct" when "evidence [is] offered to prove that a victim engaged in other sexual behavior." *United States v. Rivera*, 799 F.3d 180, 184 (2d Cir. 2015); *see United States v. Haines*, 918 F.3d 694 (9th Cir. 2019) (holding that sex trafficking case involved allegation of sexual misconduct and applying Rule 412 to exclude evidence of victim's involvement in prostitution); *see also United States v. Lockhart*, 844 F.3d 501, 510 (5th Cir. 2016) (concluding in sex-trafficking prosecution that victim's prior conviction for prostitution was inadmissible because "although prior convictions are normally admissible to impeach a witness under Rule 609, Rule 412 trumps that rule to the extent that the witness has previous convictions for prostitution.").

Sexual behavior is defined as "all activities that involve actual physical contact, i.e. sexual intercourse or sexual contact." Fed. R. Evid. 412(a) Advisory Comm. Notes (citing cases). As

11

the Advisory Committee noted: "This amendment is designed to exclude evidence that does not directly refer to sexual activities or thoughts[,] but that the proponent believes may have a sexual connotation for the factfinder . . . [a]dmission of such evidence would contravene Rule 412's objectives of shielding the alleged victim from potential embarrassment and safeguarding the victim against stereotypical thinking." *Id*. The Government cites a number of state cases applying state law equivalents of Rule 412 to kissing and other related acts. *See State v. Cervantes*, 881 P.2d 151, 152 n.1 (Or. 1994) (evidence that victim had been "hanging all over" another man just prior to her alleged rape was inadmissible under Oregon's equivalent to Rule 412); *State v. Calbero*, 785 P.2d 157, 159 (Haw. 1989) (interpreting Hawaii Rule of Evidence 412, which is similar to the federal rule, to prohibit questioning the witness about who she had kissed in the past); *Conrad v. State*, 938 N.E.2d 852, 855 (Ind. Ct. App. 2010) (interpreting Indiana Rule of Evidence 412, which is identical to the federal rule, to prohibit introducing evidence that the victim had been "making out" with another individual). Federal authority supports the Government's position on this point as well. *See Glazier v. Fox*, No. CV 2014-106, 2016 WL 827760, at *4 (D.V.I. Mar. 2, 2016) (excluding under Fed. R. Evid. 412 evidence that victim kissed the defendant on the mouth and perform a "bump and grind" in which she pressed her hips against him at a party); *Evans v. Bd. of Educ. Sw. City Sch. Dist.*, No. 2:08-CV-794, 2012 WL 4481421, at *2 (S.D. Ohio Sept. 27, 2012) (granting request to exclude evidence of victims "dating, hugging, and kissing other boys" under Rule 412).

The Court must next examine whether any exceptions to Rule 412(a)'s prohibitions apply. In criminal cases, a court may admit the following categories of evidence that are otherwise covered by Rule 412:

> (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
>
> (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>
> (C) evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412(b). Even if the evidence in question triggers one of the exceptions, such evidence still may be excluded for another evidentiary reason, such as under Rule 403. *See United States v. Carson*, 870 F.3d 584, 592 (7th Cir. 2017).

The Government argues that none of the exceptions to Rule 412 applies here. The first two exceptions do not appear relevant. Defendant invokes the third exception, specifically arguing that the Sixth Amendment right to confront witnesses is implicated. (Doc. 51 at 2-3.)[3] Generally, the Sixth Amendment "guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "[A] primary interest secured by [this right to confrontation] is the right of cross-examination." *Douglas v. Alabama*, 380 US. 415, 418 (1965). But the right to cross-examination is not limitless. The Second Circuit's decision in *Rivera* helps to explain what limits are permissible in the present context. 799 F.3d 180. There, the defendants were accused of forcing their victims to perform sex acts for money against their will. *Id*. at 185. On appeal, the defendants argued that a victim's "experience in the sex industry, and knowledge of its practices, is . . . relevant to whether she was coerced or whether, on the other hand, she knew precisely what she was getting into and accepted it as part of a money-making endeavor." *Id*. The trial court precluded this line of inquiry. *Id*. Defendants argued on appeal that this exclusion prevented them from conducting a full cross-examination, thereby violating their rights under the Confrontation Clause. *Id*. The Second Circuit disagreed because "[e]vidence of victims' prior acts of commercial sex is irrelevant to whether those victims were coerced into working as prostitutes." *Id*. "[K]nowing that suggestive behavior or even sexual acts might become a part of the job does not mean that the victims therefore consented to being threatened or coerced into performing sexual acts they did not wish to perform. The very purpose of the Rule is to preclude defendants from arguing that because the victim previously consented to have sex—for love or money—her claims of coercion should not be believed." *Id*. Critically, the government in *Rivera* "did not assert that the

---

[3] The Government's motion also preemptively addresses the Fifth Amendment's Due Process Clause, which protects a defendant's right to present his own version of the facts to the jury. (*See* Doc. 40 at 22-23); *see also Washington v. Texas*, 388 U.S. 14, 19 (1967). Because Defendant does not invoke due process as a basis for triggering an exception to Rule 412, the Court will not address due process here.

victims had not been engaged in sexualized business before they worked at [defendants'] bars. . . Prior sexual conduct for money or pleasure was [therefore] irrelevant to whether the victims' sexual activities at the bars were the result of coercion." *Id*. It was the fact that there was "no relevant use of the cross-examination testimony" that rendered the district court's decision permissible under the Confrontation Clause, particularly given that other, related lines of inquiry were permitted on cross. *See id*. at 185-86 & n. 4; *see also Haines*, 918 F.3d 697-98 (similarly finding no Confrontation Clause violation because "in cases involving adult victims forced or coerced into prostitution," courts have concluded "that evidence of other prostitution activity has little or no relevance").

*Rivera*, while obviously factually distinct from the present circumstances, serves to demonstrate that in applying Rule 412, a court must take care to compare the specific theory of the prosecution's case to the reason a defendant gives for permitting inquiry into a subject that falls within Rule 412's scope. The Ninth Circuit demands that a court carefully examine the asserted use of such evidence. In *Hughes v. Raines*, 641 F.2d 790, 793 (9th Cir. 1981), an Arizona state trial court refused to allow a rape defendant to cross-examine the complaining witness to demonstrate that she had charged another man with attempted rape on another occasion and that the charge was false. *Id*. at 792. The Ninth Circuit found no Confrontation Clause violation because "[th]e object of the intended cross-examination in this case was not to establish bias against the defendant or for the prosecution; it merely would have been to attack the general credibility of the witness on the basis of an unrelated prior incident." *Id*. at 793; *United States v. Bartlett*, 856 F.2d 1071, 1088-89 (8th Cir. 1988) (similar holding applying Rule 412).

Defendant offers only general reasons for permitting cross-examination of T.D. based on his prior conviction. He argues that the evidence is a useful "general attack on the credibility" of T.D. as a witness and more specifically that it is "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." (Doc. 51 at 2.)[4] In contrast, the Government contends (Doc. 40 at 18) that

---

[4] Defendant also suggested at oral argument that evidence about T.D.'s prior misdemeanor conviction should be admitted because the events that gave rise to the misdemeanor are similar to the events at issue in this case, namely that T.D. made advances toward another person, was rebuffed, and then got upset about being rebuffed. This,

the only possible purpose of this evidence would be to attempt to improperly prove T.D.'s propensity to commit a sexual act. The Court finds that Defendant has advanced no cogent argument why T.D.'s prior misdemeanor is relevant to his defense. The Government's motion will therefore be GRANTED without prejudice to reconsideration should a more fully developed record support a different conclusion.

Even if Rule 412 does not bar this evidence, the Government contends that T.D.'s prior conviction is otherwise inadmissible under Rule 609. (Doc. 40 at 23–24.) As mentioned, T.D.'s conviction was for simple assault in violation of 18 U.S.C. § 113(a)(5), which has a maximum penalty of six months imprisonment. Such a conviction may be used to attack a witness' credibility "if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Nothing in the record suggests T.D.'s misdemeanor conviction for simple assault required proof of or involved T.D. admitting a dishonest act or false statement.[5] Accordingly, Rule 609 provides an alternative ground for granting the Government's motion.[6]

### 7. Motion to Exclude Rumors that T.D. Assaulted Others

During the investigation of the charged assault in this case, Defendant explained to Special Agent Tucker that six specific individuals told Defendant that T.D. had sexually assaulted other people, but that these people did not wish to report the assaults. (Do. 40 at 27.) Special Agent Tucker interviewed five of these individuals (the sixth could not be identified), and none had any direct knowledge of any assaults committed by T.D. (*Id.*) One of the individuals

---

Defendant suggests, reveals T.D's "own propensity." To the extent any such propensity might be relevant to any defense theory, the Court does not view the events as similar. There is no suggestion in the record that the prior misdemeanor involved violence or any form of physical altercation.

[5] Moreover, even if the above requirement is met, if the conviction is more than ten years old, the conviction is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). The Court agrees with the Government that it is not necessary to perform this balancing evaluation because the conviction is not admissible under Rule 609(a).

[6] The Government correctly points out that even if the misdemeanor was admissible under Rule 609, the underlying facts of the conviction would not be. "[A]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction." United States v. Sine, 493 F.3d 1021, 1037 (9th Cir. 2007). "Generally, only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility." *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009).

indicated that he had heard rumors that T.D. was promiscuous, would take advantage of other men when they were intoxicated, and had been given the nickname the "Tickling Tiger." (*Id.*)

The Government argues that any related descriptions of T.D.'s past sexual acts and reference to his nickname are inadmissible hearsay and are barred by Rule 412 because they are exactly the kind of propensity evidence Rule 412 was designed to preclude. (*Id.*) The Government further points out that evidence of specific instances of conduct is not admissible to attack a witness's character for truthfulness. *See* Fed. R. Evid. 608(b).

Defendant's opposition brief appears to address this rumor/nickname category of evidence alongside the issue of T.D.'s prior misdemeanor conviction. (*See* Doc. 51 at 2.) Defendant does not specifically address the permissible purpose to which he plans to put this rumor/nickname evidence. Without a permissible purpose, the evidence is inadmissible under Rule 412. The Government's motion to exclude evidence about these rumors is GRANTED.

      *8. Motion to Admit Evidence of T.D.'s Statements at the Time of the Assault*

The government moves to admit evidence of T.D.'s statements to witnesses at the time of his assault. (Doc. 40 at 29.) Specifically, T.D. was able to yell for help by opening the door of his cabin, which capture the attention of his neighbors. (*Id.*) One of those neighbors, Sean Campbell, will testify that T.D. stated, referencing Defendant: "This kid's trying to rape me." Another neighbor, Nathan Davis, is expected to testify that T.D. yelled "rape" and "help." (*Id.*)

The Government contends that these statements are admissible under both the present sense impression and excited utterance hearsay exceptions. *See* Fed. R. Evid. 803(1), 801(2). The present sense impression exception applies to any "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The excited utterance exception applies to any "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).[7] As the Government explains, these statements, as proffered, fall squarely within

---

[7] The elements required to establish an excited utterance include: (1) an occurrence or event sufficiently startling to render normal reflective thought processes inoperative, (2) a statement that is a spontaneous reaction to the occurrence or event and not the result of reflective thought, which (3) relates to the occurrence or event. *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1026 (N.D. Cal. 2006) (citing *U.S. v. Alarcon–Simi*, 300 F.3d 1172, 1175 (9th Cir. 2002).)

16

both exceptions, as they both describe what was happening to T.D. while it was happening to him and amount to statements relating a startling event made while T.D. was under the stress that caused him to make those statements.

Defendant does not oppose this reasoning but instead argues that the circumstances surrounding these utterances remain unclear. For example, though T.D. may have been yelling for some time, the neighbors initially thought he was asking *them* to be quiet. (Doc. 51 at 3.) According to Defendant, it was not until T.D. yelled "rape" that the neighbors realized T.D. was calling for help. (*Id*.) Defendant therefore suggests that the statements, when placed into context, may not fit neatly within either hearsay exception. The Government's motion will be GRANTED, but the Court will require the Government to elicit appropriate foundation before any statements being offered as an excited utterance, a present sense impression or to show the effect on the listener.

**C.      Notice of Intent to Officer and Motion to Admit 404(b) Evidence Against Defendant**

The Government provides notice of its intent to offer the following categories of "other acts" evidence pursuant to Federal Rule of Evidence 404(b):

- Testimony from two witnesses (I.F. and A.H., who is not the same as the A.H. discussed above) who will testify that in February 2021, they attended a party in I.F.'s dorm room with Defendant and that Defendant propositioned them to engage in sexual acts.
- Testimony from a different witness (B.W.) who will testify that on the same night of the February 2021 party in I.F.'s dorm room, Defendant walked into B.W.'s dorm room uninvited and without knocking. B.W. told defendant he was in the wrong room. Defendant then replied to B.W. that he wanted to "hang out." B.W. told Defendant to leave, but Defendant responded by laughing, and telling B.W. "fuck you . . . what are you going to do about it." B.W. stood up and told Defendant to leave several times. Defendant responded with further expletives

before eventually leaving.

(*See* Doc. 40 at 23.)

The Government represents that it only intends to offer this evidence in rebuttal, if at all, depending on the defendant's case. The Government does not request that the court rule on admission of this evidence at this time, as its admissibility will depend on the character of the defense case. The court will therefore hold these issues in abeyance.

## CONCLUSION

For the reasons and with the conditions set forth above, the Court

(1)   GRANTS the Government's motions to admit A.H.'s testimony under Rule 413;

(2)   GRANTS the Government's remaining motions in limine; and

(3)   Holds in abeyance any ruling on the admissibility of the noticed Rule 404(b) evidence.

IT IS SO ORDERED.

Dated:   **April 1, 2022**

UNITED STATES DISTRICT JUDGE