**RICHARD A. BESHWATE, JR. 179782**
ATTORNEY AT LAW
2020 TULARE STREET, SUITE A
FRESNO, CALIFORNIA 93721
TELEPHONE: (559) 266-5000

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>CHARLES PORTER,<br><br>        Defendant | Case No.: 1:21-cr-00042<br><br>SENTENCING MEMORANDUM |

## I.

## INTRODUCTION

On April 6, 2022, the defendant was convicted by jury of five counts of a five-count Indictment. Count 1 charges Assault with Intent to Commit Aggravated Sexual Abuse, in violation of 18 U.S.C. § 113(a)(1); Count 2 charges Assault with Intent to Commit Abusive Sexual Contact, in violation of 18 U.S.C. § 113(a)(2); Count 3 charges Attempted Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(a)(1); Count 4 charges Abusive Sexual Contact in violation of 18 U.S.C. § 2244(b); and Count 5 charges Assault by Striking or Wounding in violation of 18 U.S.C. § 113(a)(4).

SENTENCING MEMORANDUM - 1

**Presentencing Report**

The United States Probation Office prepared a Presentence Report ("PSR") on or about September 9, 2022. According to the PSR, Mr. Porter's base offense level is 30, adding 4 levels for and 2 levels for Obstruction of Justice, for an adjusted offense level of 36, with a criminal history category of I. Under this analysis, the Guideline Sentence range for Mr. Porter is 188-235.

## II.

## FEDERAL SENTENCING SCHEME

On January 12, 2005, the Supreme Court ruled its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines at the time, the Court found there to be no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines in the cases before the Court. Id at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded:

> "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."
>
> Id. At 756.

Based on this conclusion, the Court found those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. section 3553(b)(1) or which

rely upon the Guidelines mandatory nature, 18 U.S.C. section 3742(e), incompatible with its Sixth Amendment holding. United States v. Booker, supra, 125 S. Ct. 738, 756. Consequently, the Court severed and excised those provisions, making the Guidelines effectively advisory. Id at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider guideline ranges. See 18 U.S.C. § 3353(a)(4). The court is permitted to tailor the sentence in light of other statutory concerns. See 18 U.S.C. § 3353(a); United States v. Booker, supra, 125 S. Ct. 738, 757.

The mandate of 18 U.S.C. § 3553(a) is, of course, for the court to "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in paragraph 2 of that same statute. In United States v. Hunt, 459 F.3d 1180, 1182 (11th Cir. 2006), the court summarized the factors that must be considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established . . .; (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar

SENTENCING MEMORANDUM - 3

records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

Under 18 U.S.C. §3661, no limitation shall be placed on the information concerning the background, character, and conduct of the defendant which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence (emphasis added). This statutory language overrides the advisory policy statements in Part H of the sentencing guidelines, which lists a variety of factors not ordinarily relevant to sentencing such as the defendant's age, education, vocational skills, mental/emotional conditions, drug or alcohol dependence and lack of guidance as a youth. See U.S.S.G. §5H1.

The directives of Booker and section 3553(a) make clear that courts may no longer uncritically apply the guidelines. United States v. Ranum, 353 F. Supp. 2d 984, 985 (E.D. Wis. 2005). Such an approach would be inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker directing courts to consider all of the section 3353(a) factors, many of which the guidelines either reject or ignore. Id at 985-86. As one district court judge observed, any approach which automatically gives heavy weight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in Booker. United States v. Jaber, 362 F. Supp. 2d 365, 371 (D. Mass. 2005); See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

In sum, in every case, a sentencing court must now consider all the section 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than

SENTENCING MEMORANDUM - 4

necessary to meet the goals of sentencing. If the guidelines conflict with other sentencing factors set forth in section 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (Arguing Section 3553(a) requires-as a matter of law-that district courts impose a sentence sufficient, but not greater than necessary, to meet the four purposes of sentencing set forth in subsection 3553(a)(2)-retribution, deterrence, incapacitation, and rehabilitation. Imposition of a sentence greater than necessary to meet those purposes is therefore a violation of section 3553(a).

### III.

### APPLICATION OF THE STATUTORY SENTENCING FACTORS

In passing sentence, the court need not recite on record all of the considerations that 18 U.S.C. section 3553(a) lists. Rather, it is enough to calculate the guideline range accurately and to explain why (if sentence lies outside it) defendant deserves more or less. United States v. George, 403 F.3d 470 (7th Cir. 2005).

In the instant case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

#### The Nature and Circumstances of the Offense

There is no argument as to the seriousness of the offense, Mr. Porter' involvement in this offense was soaked in alcohol, drugs, and a general permissive lifestyle, that caused him to lose appropriate boundaries. Unfortunately for Mr. Porter, it was the intervention of law enforcement that has helped him to see, much more clearly, the negative effects that excessive alcohol and

SENTENCING MEMORANDUM - 5

drug consumption can have, both on a person's health, and wellbeing. Mr. Porter is not attempting to minimize his criminal act, but simply requests this Court to understand and consider the totality of the circumstances, including his significant level of intoxication, as well as the section 3553(a) factors below.

## History and Characteristics of the Defendant

Mr. Porter has had a life of difficult circumstances Mr. Porter was born in 1990 in San Dimas, California to father and mother, but by 1995 his mother, and filed for divorce from his father as a result of his severe alcoholism, as well as physical abuse. This began a long period of estrangement from his father. In 1996 or 97 he was diagnosed with severer ADHD by his doctors and begin taking various medications until 2004.

By 1997 his parents' divorce was finalized and he was being subject to Physical abuse by his mother. From about 1997 to the year 2000, Mr. Porter experienced sexual abuse initially by a childhood friend and eventually by that abusers older brother.

In 2001 he moved to a new neighborhood in La Verne California, or Mr. Porter was abused by a group of older kids, was videotaped and was blackmailed repeatedly throughout middle school. As a result, in 2003, he relocated from his mother's house to his father and stepmother's house in Sherman Oaks, California, beginning a long, custody battle. That same year found Mr. Porter beginning to experiment with alcohol and recreational drugs. He was only 13. He regularly, abused, alcohol and drugs through high school, until 2006, when he was transferred to the Army and Navy academy, a military boarding school in Carlsbad, California. He was selected to participate in a "honor guard" unit. While in this unit, he was subject to excessive and abusive hazing, and was a witness to hazing of other students which bordered on

SENTENCING MEMORANDUM - 6

physical and sexual abuse. Anybody who reported the abuse was expelled from school, and the abuse was swept under the carpet.

In 2007 during the Thanksgiving holiday Mr. Porter was a witness to his stepbrother's suicide at home. He had to alert as father and stepmother, as a result was diagnosed with PTSD. He left the academy to begin working in his father's office and completed an independent study program at West Valley Center to prepare to enter the United States Marine Corps. Later, in November 2007, his father passed away suddenly from an aneurysm. He was sent to briefly live with his sister in Upland, California before living as a homeless youth in Hollywood and in the San Fernando Valley. He periodically stayed at the LAYN shelter and in an abandoned homes. This began a downward spiral of depression and drug use, and was a victim of further sexual abuse, and exploitation while on the streets.

In spring of 2008 he returned to live with his mother, stopped using drugs and worked to complete high school at Vista school in San Dimas. He completed the diploma program and moved back to Los Angeles to begin work at Green Guild Medical Dispensary in Long Beach. He moved back to Laverne area in the fall of 2010 and by early 2011 his mother was diagnosed with cancer, and he begin living with her as her caregiver and working for DIRECTV. In 2014, he began to take college classes at Mt Sac. In the fall of 2017, his mother was placed on hospice care, and he was designated as a primary caregiver, requiring him to pause college. She passed away in October of that year. In the spring of 2019, he completed his degree program with a B.S. degree in agriscience, education and management. After graduating, he set out on a cross country hike of the Pacific coast trail. In the summer of 2019, he began excessive drinking while on the hike, fueled by the downward spiral of depression, following his mother's death. Soon after, he

SENTENCING MEMORANDUM - 7

began experiencing episodes of alcohol abuse related seizures. In February 2020, he accepted the position at Yosemite and relocated and in April this incident occurred.

This was a recipe for disaster, and it has come to fruition. Charles quickly fell into addiction, and on the night of this incident, it was reported that his blood alcohol level was .29, which is excessively high, and a clear indication of someone who has the terrible illness called Alcoholism. Its this level of intoxication that renders its prey a shell of oneself, as he was not in a position to make rational, well founded decisions, and would not have engaged in this conduct but for his high level of intoxication. In fact, most of us would not be conscious at that level. Mr. Porter recognizes that he needs help, therefore he is seeking to attend the RDAP program.

It should be noted that Mr. Porter has no prior criminal history, and this incident should be viewed as aberrant and done under a mental defect of severe alcohol intoxication.

**The Need for the Sentence Imposed**

The traditional goals of sentencing, as outlined in 18 U.S.C. section 3553(a)(2), are punishment, deterrence, protection of society and rehabilitation. Mr. Porter would ask this Court to consider rendering a sentence that is sufficient, but, not greater than necessary, to comply with these goals. The advisory guideline range as calculated in the PSR are adequately reflects the totality of the history of Mr. Porter and the circumstances involved in the offense. Considering all information, 120 months would be appropriate to comply with the statutory directives of 18 U.S.C.§3553(a).

SENTENCING MEMORANDUM - 8

## IV.

## CONCLUSION

Mr. Porter does not stand before this Court arguing that he should not be punished for his conduct. Mr. Porter is only requesting that when this Court imposes its sentence that it takes into consideration all the statutory factors outlined in 18 U.S.C. § 3553. After considering those facts, Mr. Porter asks this Court to recognize that he is not a well man, and has had a terrible set of circumstances that culminated in his behavior that night.. Mr. Porter understands that a significant period of incarceration is warranted and hopes that upon receipt of appropriate drug and alcohol treatment, he is given the opportunity to become a productive member of society, he is therefore requesting a sentence of 120 months.

October 21, 2022

Richard A. Beshwate, Jr.<br>
Attorney for Mr. Porter.

SENTENCING MEMORANDUM - 9